# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| MICHAEL NETHERTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:15-cv-0186 |
| ) | Judge Aleta A. Trauger |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner of Operations of ) | |
| the Social Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff Michael Netherton brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Commissioner's denial of his application for disability insurance benefits under Title II of the Social Security Act.

On February 20, 2018, the magistrate judge issued a Report and Recommendation ("R&R") (Doc. No. 34), recommending that the decision of the Social Security Administration ("SSA") be affirmed. The plaintiff has filed timely Objections (Doc. No. 35), to which the SSA has responded (Doc. No. 36). For the reasons discussed herein, the court will overrule the Objections, accept the R&R, and dismiss this action.

---

[1] Nancy A. Berryhill was the Acting Commissioner of Social Security beginning January 23, 2017. However, her acting status ended as a matter of law in November 2017 pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq.*, and Berryhill returned to her position of record as Deputy Commissioner of Operations. According to the agency's Social Security Administration's website, "[i]n accordance with the agency's Order of Succession, [Berryhill] continues to lead the Social Security Administration as we await the nomination and confirmation of a Commissioner." https://www.ssa.gov/agency/commissioner.html (last accessed March 26, 2018).

I. **STANDARD OF REVIEW**

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(1)(C); 28 U.S.C. § 636(b)(1)(C); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001); *Massey v. City of Ferndale*, 7 F.3d 506, 510 (6th Cir. 1993). Objections must be specific; a general objection to the R&R is not sufficient and may result in waiver of further review. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). In conducting its review of the objections, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In Social Security cases under Title II or Title XIV, the Commissioner determines whether a claimant is disabled within the meaning of the Social Security Act and, as such, entitled to benefits. 42 U.S.C. §§ 1383(c), 405(h). The court's review of the decision of an administrative law judge ("ALJ") is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see* 42 U.S.C. § 405 (g) (2012) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal citations omitted). "The substantial evidence standard . . . presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). "Therefore, if substantial evidence supports an ALJ's decision, the court defers to that finding, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Id.* (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

## II. OBJECTION

The plaintiff posits only one objection: that the magistrate judge erred in finding that substantial evidence supported assigning little weight to consulting physician Dr. Bruce Davis's opinion. The objection is based on the following arguments: (1) the ALJ failed to recognize that Dr. Davis specifically provided explanations for some of the limitations he ascribed to the plaintiff, as the plaintiff explained in his Memorandum (Doc. No. 28, at 15); (2) it was inconsistent for the ALJ to discount Dr. Davis's opinion on the basis that it was that of a consultative examiner who did not have a treatment relationship with the plaintiff and then, "in the next paragraph, [to give] significant weight to the opinions of doctors who have never seen Plaintiff" (Doc. No. 35, at 2 (citing Doc. No. 28, at 14)); (3) the ALJ's "one-time observation of Plaintiff sitting" is not sufficient to permit the ALJ to discredit the opinion of an examining physician and constituted an inappropriate application of the "sit and squirm test" (Doc. No. 35, at 2 (citing *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983); *Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 171 (6th Cir. 2016))); (4) the magistrate judge's reliance on and application of *Moon v. Sullivan*, 923 F.2d 1175 (6th Cir. 1990), was incorrect; (5) the ALJ incorrectly observed that Dr. Davis "appears not [to] have reviewed any of claimant's treatment records" (Doc. No. 35, at 3), and, moreover, Dr. Davis's findings were consistent with his own examination; (6) the ALJ did not point to any medical evidence in the record that conflicted or was inconsistent with Dr. Davis's findings; and (7) the ALJ did not

adequately explain his reasons for rejecting Dr. Davis's limitations, particularly in light of his failure to point to evidence in the record that refuted those limitations and since Dr. Davis "did explicitly state what findings he based . . . those limitations on" (*id.* at 4). The plaintiff concludes: "Given that the VE testified that a limitation to occasional use of just the right hand would [preclude] performance of past relevant work, this lack of reasoning for reject[ing] the manipulative limitations i[s] harmful." (*Id.*)

## III. ANALYSIS

Dr. Bruce Davis's report, Exhibit 5F in the Administrative Record ("AR"), which is dated April 21, 2011, notes, under the heading of "Health History," that the "source" for the claimant's health history is "patient – poor historian" and "limited medical reports." (AR 241.) The plaintiff reported his primary health problems to include elevated blood pressure,[2] neck and back pain, and hepatitis C. The only notable abnormalities observed in the course of Dr. Davis's physical examination included "upper tenderness without mass" in the abdomen due to hepatitis C (AR 242), and

> Posterior neck pain (no tenderness, spasm) with slow neck flexion 45°, extension 45°, lateral flexion 45°, rotation 50° and slow bilateral shoulder abduction & forward raising 120°; normal elbow, wrist, finger motions with reduced grip – 3-4/5 without atrophy, swelling; low back pain, tenderness with slow position changes, thoracolumbar flexion 50°/extension – 20°/lateral motion – 20°, hip flexion –90°/abduction 30°, straight leg raising – 50° supine/70° seated; normal knee flexion – 130° extension -0°, incomplete squatting; . . . slow (pain, unsteady) gait and gait maneuvers (heel, toe, & tandem) across exam room without assistance.

(*Id.*)

Based on this assessment and the reported history of back and neck pain, Dr. Davis diagnosed the plaintiff as having "degenerative cervical & lumbar disc disease." (AR 243.) He

---

[2] Dr. Davis noted that the plaintiff was on medication to control his high blood pressure, and his blood pressure that day, 110/60, was not noted to be high.

then assessed the plaintiff as being able to lift up to 10 pounds frequently, up to 20 pounds occasionally, and never over 20 pounds; to occasionally carry up to 20 pounds but never more than that; to sit for 1 hour at a time and a total of 6 hours in an 8-hour work day, and to stand or walk for 30 minutes at a time and up to 4 hours each in an 8-hour workday; to occasionally reach, handle, finger, feel, push, and pull, with each hand; to occasionally operate foot controls with both feet; to never climb stairs, ramps, ladders or scaffolds, never balance, stoop, kneel, crouch or crawl; to shop, travel without a companion, ambulate without crutches, walker or wheelchair, use public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare a simple meal and feed himself, care for personal hygiene, and sort, handle and use paper files. He assessed the plaintiff as unable to tolerate exposure to unprotected heights and able only occasionally to operate a moving vehicle and tolerate exposure to moving mechanical parts, humidity and wetness. He opined that the plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces. Dr. Davis referenced generally the plaintiff's hepatitis C infection with weakness and fatigue, hypertension, and pain and reduced motions due to degenerative cervical and lumbar disc disease and bilateral weak grip as the medical or clinical findings that supported these limitations. (AR 244–48.)

At the hearing before the ALJ, a Vocational Expert testified that an individual who could perform light work except that he could not climb, balance, stoop, kneel, crouch or crawl more than occasionally, needed to avoid concentrated exposure to extreme cold and to hazardous work environments, and could not have more than frequent interaction with others could perform the plaintiff's past relevant work. (AR 44.) This hypothetical matched the functional abilities and limitations the ALJ ascribed to the plaintiff in his written opinion. On this basis, the ALJ determined that the plaintiff could perform past relevant work and, therefore, did not qualify as

disabled. (AR 16–17.)

In reaching that conclusion, the ALJ noted that the plaintiff saw treating physician Dr. Kabtimer on April 26, May 10, August 10, August 24, and September 21, 2011. Dr. Kabtimer's records reflect that the claimant had no musculoskeletal complaints and that the claimant's spine and musculoskeletal system were examined and found to be without defect. (AR 18; *see also* AR 265–80 (medical treatment notes from April through September, 2011 noting no back pain or joint stiffness, no muscle weakness or motor deficit).) Dr. Davis's examination occurred during the same time frame, on April 21, 2011. The ALJ took note of the limitations assessed by Dr. Davis, detailed above, specifically observing Dr. Davis's opinion that the plaintiff could only sit for an hour at a time, walk or stand for no more than 30 minutes at a time and could never climb, balance, stoop, kneel, crouch or crawl. (AR 18.)

The ALJ also noted that the plaintiff was first diagnosed with cirrhosis of the liver and hepatitis C in August 2003. He claimed to be tired in one office visit with treating physician Dr. Enayet, in September 2010, but on several other office visits he did not claim to be tired. Moreover, the plaintiff continued working, despite his diagnosis, and never claimed to be fatigued or to have significant effects from the cirrhosis and hepatitis C until after he was laid off from his job in October 2010. Dr. Kabtimer's records from April through September 2011 did not indicate any complaints of functional impediments or limitations related to cirrhosis or hepatitis. As the ALJ observed, Dr. Davis credited the plaintiff's complaints of fatigue related to his hepatitis C but observed no liver-specific abnormalities, such as organomegaly or ascites. (AR 18 (citing Ex. 5F).)

Although treating physician Dr. Bacon gave an opinion about the plaintiff's inability to work in July 2010 due to "severe low back pain, pain to hips & thighs, worse with activity" (*see*

AR 235, 238), the ALJ found that (1) an opinion about ability to work is reserved to the Commissioner; and (2) Dr. Bacon's opinion appears to have been intended as a temporary release from work and not an assessment of permanent limitations. (AR 18.) This assumption was substantiated by the fact that the plaintiff did go back to work, at some point, and continued to work until October 2010, when the plant where he was employed closed and he was laid off. (Hr'g Tr., AR 30.)

In light of the record as a whole and specifically with reference to the evidence cited above, the ALJ did not fully credit Dr. Davis's opinion that the plaintiff could never stoop,

> most notably because a complete inability to stoop (bend the body downward and forward by bending the spine at the waist, Social Security Ruling 85-15) would be inconsistent with my observation that claimant was able to assume a seated position during his hearing. In addition, the consulting physician saw claimant just once and appears not to have reviewed any of claimant's treatment records. For the most part, the consulting physician did not refer to specific abnormal medical findings supporting his opinions. I assign little weight to this opinion.

(AR 18–19.)

As the magistrate judge noted, and contrary to the plaintiff's assertion, an ALJ is not required to give good reasons for rejecting the opinion of a one-time examiner and consultant such as Dr. Davis. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) ("[A]n ALJ is procedurally required to 'give good reasons in [his] notice of determination or decision for the weight [he gives the claimant's] treating source's opinion.' However, this requirement only applies to *treating* sources. With regard to nontreating, but examining, sources, the agency will simply '[g]enerally [] give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined' him." (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007), and 20 C.F.R. § 404.1527(c)(1)[3] (most

---

[3] Both *Smith* and *Ealy* mistakenly refer to 20 C.F.R. § 404.1527(d)(1) rather than (c)(1).

alterations in the original))).

Moreover, the record does not support the plaintiff's assertion that the ALJ improperly applied the "sit and squirm" test in this case. In *Weaver*, the Sixth Circuit found that the ALJ "did not deal correctly with the issue of pain." 722 F.2d at 312. The court interpreted the ALJ's rejection of the plaintiff's complaints of pain to be premised "solely on the basis of his own observation of [the plaintiff] at the hearing." *Id.* While recognizing that observation and credibility are "material, relevant, and admissible," the court found that the dismissal of a claim of pain based *solely* on the ALJ's observations at the hearing amounts to an application of the "infamous and thoroughly discredited 'sit and squirm' test.'" *Id.*; *see also Sorrell*, 656 F. App'x at 171–72 ("[W]here the *only* factor the ALJ relies upon in denying disability is the person's demeanor at the hearing, the ALJ has employed the 'infamous and thoroughly discredited "sit and squirm" test.'" (quoting *Martin v. Sec'y of Health & Human Servs.*, 735 F.2d 1008, 1010 (6th Cir. 1984)).

Here, the ALJ did not rely "solely" on his observations of the plaintiff at the hearing, though his observations factored into his analysis. He also observed that Dr. Davis had seen the plaintiff only one time, apparently had few if any of the plaintiff's medical records, and failed to refer to specific abnormal medical findings in support of his assessment of the plaintiff's ability to do work-related activities. (AR 18–19.) Further, however, the ALJ's consideration of Dr. Davis's assessment fell within the context of his review of the contemporaneous treatment records of Dr. Kabtimer, an actual treating source.

The plaintiff's assertion that the magistrate judge erroneously relied on *Moon v. Sullivan*, 923 F.2d 1175 (6th Cir. 1990), is not well taken either. *See id.* at 1181 ("[T]he ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's

personal observations, and the objective medical evidence contradict each other."). The plaintiff claims that *Moon* is inapplicable, because the ALJ did not identify the conflicting or inconsistent medical evidence. To the contrary, as noted above, the ALJ had already observed that Dr. Kabtimer's treatment notes from April 26, May 10, August 10, August 24, and September 21, 2011 "reflect that the claimant had no musculoskeletal complaints and that the claimant's spine and musculoskeletal system were examined and found to be without defect" and also "indicate no complaint of functional impediments or limitations related to cirrhosis or hepatitis." (AR 18.)

In sum, (1) the ALJ correctly noted that Dr. Davis did not provide any explanation for some of the ascribed limitations and provided only very general reference to the plaintiff's medical diagnoses in support of others ("hepatitis C infection with weakness/fatigue, hypertension, degenerative cervical & lumbar disc disease with pain, reduced motions" (AR 244), "neck pain with bilateral reduced shoulder motions, bilateral weak grip (AR 246)); (2) there is no requirement of absolute consistency between the weight accorded by the ALJ to the opinions of various consultants, particularly when the two consultative examinations to which the plaintiff refers were psychiatric evaluations by Drs. Loftin and Vargas, not medical evaluations related to the plaintiff's back complaints; (3) the ALJ did not apply the "sit and squirm test"; (4) the ALJ did not inappropriately discount the plaintiff's subjective account of pain; (5) the ALJ's observation that Dr. Davis "appears not [to] have reviewed any of claimant's treatment records" (Doc. No. 35, at 3) is supported by Dr. Davis's own statements; (6) the ALJ did point to medical evidence in the record that was inconsistent with Dr. Davis's findings; and (7) the ALJ adequately explained his rationale for rejecting the limitations ascribed by Dr. Davis. Consequently, the magistrate judge did not err in finding that substantial evidence supported assigning little weight to consulting physician Dr. Bruce Davis's opinion.

## V. CONCLUSION

For the foregoing reasons, the court will overrule plaintiff's Objections (Doc. No. 35); accept and adopt the magistrate judge's R&R in its totality (Doc. No. 34); deny the plaintiff's motion for judgment (Doc. No. 27); and affirm the SSA's decision.

An appropriate order is filed herewith.

ENTER this 27th day of March 2018.

ALETA A. TRAUGER
United States District Judge